OPINION OF THE COURT
David B. Saxe, J.
How quickly must a landlord act before he loses the right to recover possession of real property through the swift and efficient means of a summary proceeding for the nonpayment of rent brought under the Real Property Actions and Proceedings Law?
The respondent, citing Gramford Realty Corp. v Valentin (71 Misc 2d 784) and City of New York v Betancourt (79 Misc 2d 907 [App Term, 1st Dept]) among others, has made a motion to dismiss the nonpayment petition for eviction on the ground that the petitioner has allowed 29 months to elapse before instituting this action.
The landlord claims that the delay is due to the fact that the tenant, who was paying a monthly rental of $56.38, refused to allow access to his apartment for the purpose of permitting repairs, while making applications for rent reductions based in part on items allegedly in need of repair. The landlord states that a demand for rent was made of the tenant, from time to time, without success.
*451 The motion to dismiss is denied. The holding in Gram-ford (supra) is in my opinion without precedent and beyond the power of a court to reach. I decline to follow it except in the most unusual circumstance. The fact that succeeding cases have cited it is only proof that once judicial mischief begins, it proceeds quickly until such time as it ultimately comes to rest in what is termed, a legal principle or rule, the foundation of which is therefore suspect.
In Gramford Realty Corp. v Valentin (supra), the tenants who were not billed for rent for a year, urged that the delay in seeking payment, equitably estopped the landlord from collecting it through summary proceedings. The court held that the tenants did not establish a defense of equitable estoppel on their claim that the landlord’s sloth was calculated to make it impossible for them to remit the amounts alleged to have accumulated as unpaid rent. Nevertheless, the case held that the delay of more than a year in commencing a summary proceeding for nonpayment of rent was excessive and, as a result, the landlord forfeited his right to resort to the use of a summary proceeding. Consequently, the landlord was forced to pursue a plenary action for ejectment.
In arriving at that decision, the court relied upon two factors. First, the court stated that by delaying the start of these proceedings, the landlord had perverted the device of summary proceedings, designed to assist landlords in regaining possession, quickly and inexpensively. Second, the court said (supra, p 786) that it had the inherent power arising out of its duty to regulate litigation, to prevent “outrages not even a Judge can ignore.”
In effect, the court in Gramford (supra) created a new rule to operate defensively in a summary proceeding. Simply stated, the rule was: where the tenant could prove no equitable defense in a landlord’s delayed summary action to recover rent, a court could nevertheless dismiss the petition solely because of a finding that the maintenance of the proceeding offended the court’s notion of fairness and justice, although the statute contained no grant of authority to dismiss on these grounds.
Gramford (supra) cited Midman Realty Corp. v Kane (NYLJ, Jan. 20, 1971, p 19, col 4) as authority. That case, *452 however, involved a tender of rent that was refused by the landlord. The court in Midman held that an equitable estoppel had therefore been established. Gramford did not even involve a tender of rent. (See, generally, Shaw, Trend Toward Judicial “Legislation”, NYLJ, May 10, 1973, p 4, col 4; letters of John M. Jokl, Esq., and Daniel L. Green-berg, Esq., NYLJ, May 16, 1973, p 4, col 7.)
In a later case, City of New York u Betancourt (79 Misc 2d 146, affd 79 Misc 2d 907, supra), the landlord waited in excess of three years before commencing a summary proceeding seeking rent and possession. The court, not citing Gramford (supra), held (p 908) that “[w]here a landlord fails for a substantial period of time to avail himself of this added remedy to the detriment of the tenant, he is no longer entitled to the summary relief as to the stale claims.” The rule established was that a landlord is entitled to a judgment of possession based only upon the nonpayment of non-“stale” rent claims.
Under Gramford (supra), I would be obliged to dismiss this summary proceeding in its entirety. Under the Betancourt rule, I could permit the summary proceeding to go forward only as to rent claims that are not “stale” although no guidance is offered for determining what is or is not a “stale” rent claim.
I choose not to follow Gramford (supra) for the reasons stated previously. As for the Betancourt rule, it posits a requirement for the tenant seeking to invoke it, to establish detriment or harm. Succeeding cases have seemingly ignored this requirement and instead have focused upon defining the term “stale.”
In Maxwell v Simons (77 Misc 2d 184), which involved a welfare tenant who lived in a substandard building containing numerous housing code violations (see letter of John M. Jokl, Esq., op. cit.), the court determined that a landlord had a three-month period within which to commence a summary proceeding for nonpayment of rent.
The consequence of not doing so was that the rent claimed before the three-month cutoff was deemed a stale claim and could not serve as a predicate for possession. Thus, Maxwell (supra) was an attempt to judicially create a *453 new Statute of Limitations. For all rent claimed to be due beyond the three-month period immediately preceding the start of the summary proceeding, the landlord was required to sue in an action at law. In other words, Maxwell held that if a landlord waited more than three months before starting a summary proceeding, no matter what the reason, he could obtain a money judgment for all prior rent owed in an action at law, and a possessory judgment and up to three months’ arrears in rent based upon the tenant’s failure to pay rent during the last three-month period.
In Antillean Holding Co. v Lindley (76 Misc 2d 1044, 1047), the court stated however that “the three-month rule should not be an automatic and conclusive bar to landlord’s further recovery, but merely shifts the burden to him to show reasonable diligence in bringing the proceeding.” (See, also, New Approach Rehabilitation Corp. v Purdie, NYLJ, Dec. 29, 1980, p 13, col 5 [App Term, 2d & 11th Judicial Dists].)
Thus, under Antillean (supra), if a landlord can establish reasonable diligence or justification for the delay, the three-month rule in Maxwell v Simons (supra) would not apply.
In City of New York v Romero (NYLJ, Nov. 15, 1973, p 18, col 5), the court, citing Gramford Realty Corp. v Valentin (supra), and Maxwell v Simons (supra), but not Antillean Holding Co. v Lindley (supra), held that a 17-month delay indicated a lack of urgency and thereby resulted in a landlord’s forfeiture of the right to use a summary proceeding.
A succeeding case, Midtown Props, v Trebotica (NYLJ, June 25, 1974, p 15, col 1), treated a landlord’s delay (17 months) as a matter of equitable defense, though soon after, in New York City Housing Auth. v Hatzigiannis (NYLJ, Dec. 16, 1974, p 18, col 6), a two-year delay was simply termed “unconscionable” under the authority of the Gramford Realty Corp. v Valentin rule.
Where the delay was reasonable or justifiable (Antillean Holding Co. v Lindley, supra), summary proceedings have been allowed to continue. Therefore, where the landlord was unable to start a nonpayment summary proceeding against the tenant due to a continuing will contest regard *454 ing the rights to the premises (Mathews v Deloach, NYLJ, June 30, 1978, p 15, col 2 [App Term, 2d & 11th Judicial Dists]); or because there was a court-appointed receiver in control of the premises (Malek v Cruz, 74 Misc 2d 448; Genuth v Albino, NYLJ, May 1,1980, p 7, col 1 [App Term, 1st Dept]); or because there was a holdover proceeding pending between the landlord and tenant (United Artists Corp. v No. 731 Seventh Ave. Rest., 75 Misc 2d 717); or because the landlord had “no choice but to wait” as a result of governmental regulations (Colony Gardens v Rossman, NYLJ, Oct. 9, 1974, p 20, col 8), those who commenced summary proceedings for nonpayment of rent shortly after the removal of the disability were held to have established “reasonable diligence” for their delay. This result is correct because a landlord should not be penalized for a delay that was not his fault.
In Mt. Nebo Baptist Church of N. Y. v Myers (NYLJ, April 10,1979, p 10, col 5 [App Term, 1st Dept]), the court, noting by implication that mere delay was not sufficient to affect the landlord’s right to use summary proceedings, said that a finding of staleness had to be based upon a showing of loches. Mt. Nebo clarified Betancourt (supra) by stating that a demonstration of harm would have to be accomplished through a proof of an equitable defense. The claim would be deemed stale where there was “proof that the petitioner had calculatedly delayed in bringing the proceeding so as to make the final sum so prohibitive as to be beyond the means of the tenant to pay.” The test of financial inability of one faced with an accumulated claim for money, should be balanced, however, against the obligation of the individual who owes money to reserve an adequate sum to cover the debt if and when a claim is made.
In Hester Mgt. Co. v Pizarro (NYLJ, Oct. 12,1979, p 5, col 3), Judge Gammerman stated: “The [Betancourt] rule is not inflexible. The amount which the tenant is required to pay to remain in possession must necessarily be determined by the extent of delay in instituting the proceedings, the reasons, if any, for the delay, and the prejudice resulting to the tenant from the delay”.
*455 In the most recent pronouncement on the issue of delay (32 months) 177 East 90th St. v Devine (NYLJ, March 30, 1982, p 6, col 1 [App Term, 1st Dept]), the court eschewed the Gramford defense stating that it “ ‘should be used sparingly and in cases where it is clear that the landlord was manipulating the tenants for a setup with eviction as the intended goal’ (Malek v. Cruz, 74 Misc 2d 448, 452; see also Schwartz v. Abt, N.Y.L.J., May 4,1978, p. 5, col. 4 [AT 1], City of New York v. Betancourt 79 Misc. 2d 146; aff’d 79 Misc 2d 907). We have consistently refused to establish arbitrary standards where claims for rental arrears are deemed stale. (Trustees of C.I. Mtge. Group v. NYILR Ltd., N.Y.L.J., Dec. 8, 1978, p. 6, col. 3 [AT 1]).”
In cases of alleged delay in the commencement of a nonpayment summary proceeding, I hold that the rights of tenants can be adequately protected, through the use of traditional equitable doctrines rather than through the creation of artificial rules of time limitations and staleness.
Two equitable doctrines may be applicable. One, equitable estoppel, arises only when a person either by his declaration or conduct has induced another person to act to his detriment in a particular manner. (Otis Elevator Co. v Heggie Realty Co., 107 Misc 2d 67 [App Term, 1st Dept]; People v Bank of North Amer., 75 NY 547.) In order to establish equitable estoppel, there must be a showing of conduct which amounts to a false representation or concealment of material facts; an intention or expectation that such conduct will be acted upon by the other party; knowledge, either actual or constructive of the real facts; reliance on the conduct; and action taken of a character such as to change a party’s position prejudicially. (Gratton v Dido Realty Co., 89 Misc 2d 401, affd 63 AD2d 959.) The moving papers do not establish equitable estoppel which would preclude a party by his conduct from asserting a right to the detriment or prejudice of another party. (Spatz v Aetna Cas. & Sur. Co., 36 Misc 2d 950.)
The basis of a defense of loches is that the plaintiff has unreasonably and inexcusably delayed to the prejudice of the defendant thereby causing disadvantage or prejudice to him. (Prouty v Drake, 18 Misc 2d 887, 891.) To establish the *456 defense of loches, two essential facts must be found; first, an egregious, protracted delay and second, substantial prejudice to the party affected. (Matter of Genesee Hosp. v Kramarsky, 95 Misc 2d 609; Aireo Alloys Div. v Niagara Mohawk Power Corp., 76 AD2d 68.)
Laches does not involve a mere matter of time, but principally involves a question of the inequity of permitting a claim to be enforced, this inequity being founded on some change in the position or relationship of the parties. (2 Pomeroy, Equity Jurisprudence [5th ed], § 419d.) This is the case where a party knowing his rights, takes no steps to enforce them until the position of the other has, in good faith, become so changed that he cannot be restored to his former state, delay becomes inequitable and operates as an estoppel against the assertion of the right. (Id., § 419d; Galway v Metropolitan El. Ry. Co., 128 NY 132; Glenesk v Guidance Realty Corp., 36 AD2d 852.) The motion papers here establish delay but otherwise indicate no substantial prejudice or harm. This demonstration is insufficient to support a determination of loches.
I hold as follows:
(a) Gramford Realty Corp. v Valentin (71 Misc 2d 784, supra) is not applicable here.
(b) Gramford Realty Corp. v Valentin (supra) is only applicable in those situations where it is clear that the landlord has, by design and with intent, manipulated the tenant with eviction in mind (177 East 90th St. v Devine, supra).
(c) In situations not covered by (b) above, a landlord may bring summary proceedings irrespective of the extent of delay, but the tenant may interpose and must prove all applicable equitable defenses.
(d) “Staleness” (City of New York v Betancourt, 79 Misc 2d 146, affd 79 Misc 2d 907, supra) must be determined through proof of an equitable defense and not through use of an artificial time limitation: that being so, Maxwell v Simons (77 Misc 2d 184, supra) is not the law in the First Department.
(e) Delay, no matter how long, in bringing summary proceedings, does not, by itself, establish “unconscionabil *457 ity.” (Cf. New York City Housing Auth. v Hatzigiannis, NYU, Dec. 16, 1974, p 18, col 6, supra.)
(f) The existence of delay does not shift the burden to the landlord to demonstrate reasonable diligence in bringing the summary proceeding (cf. Antillean Holding Co. v Bindley, 76 Misc 2d 1044, supra). The tenant has the burden of demonstrating that the landlord did not proceed with reasonable diligence under the facts of the particular case.
(g) If a landlord proves that timely demands have been made for rent, that is a sufficient demonstration of the landlord’s continued and active interest in collecting rents from the tenant and thereby renders the rent claims current despite the fact that summary proceedings were never commenced. (See City of New York v Betancourt, supra.)
The nature of a summary proceeding which is predicated upon the nonpayment of rent is essentially a nonconsensual security arrangement between a landlord and tenant. In personal property security arrangements, the merchant secured party may hold a security interest (under Uniform Commercial Code, art 9), in the goods purchased. Upon default, the secured party may pursue statutory remedies with respect to the collateral: so too, with respect to the landlord’s right to possession predicated upon nonpayment of rent. The collateral is the apartment; the debt is rent. The right to summary possession upon default in the payment of the entire debt (all the rent owed) is a direct right granted by statute and, subject to the application of traditional doctrines of equity, it is my opinion that a court may not rewrite a statute under the guise of construing it. (Meltzer v Koenigsberg, 302 NY 523.)
As Justice Frankfurter stated: “Even within their area of choice the courts are not at large. They are confined by the nature and scope of the judicial function in its particular exercise in the field of interpretation * * * As a matter of verbal recognition certainly, no one will gainsay that the function in construing a statute is to ascertain the meaning of words used by the legislature. To go beyond it is to usurp a power which our democracy has lodged in its elected legislature * * * A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy making might wisely *458 suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation. He must not read out except to avoid patent nonsense or internal contradiction.” (Frankfurter, Some Reflections on the Reading of Statutes [1947], p 13.)
The respondent also contends that the petition should be dismissed because the petitioner failed to comply with RPAPL 741 (subd 4) in that there was no explanation in the petition of how the total amount of rent claimed was arrived at. (Goldman Bros, v Forester, 62 Misc 2d 812.) However, the petition states that the apartment is rent controlled and the amount charged is within the guidelines established by the Office of Rent Control. The controlled rental is a matter of public record. Therefore, I hold that since the petitioner stated the total amount owed, the requirements of RPAPL 741 (subd 4) were satisfied. (Fitzgerald v Washington, 80 Misc 2d 861.)
The motion is dismissed. The clerk of Part 49 is directed to restore the proceeding to the nonpayment calendar and to notify both sides.